UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

TIBO CHAVEZ, JR. and
SVETLANA CHAVEZ,

    Plaintiffs,

    v.                               CIV. NO. 10-37 ACT/LFG

QUALITY AUTOMOTIVE SALES
AND SERVICE, INC., d/b/a QUALITY
BY DILORENZO, et al.,

    Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendants' Motion for Partial Summary Judgment filed July 30, 2010 [Doc. 39]. Plaintiffs filed a response [Doc. 46] and Defendants filed a reply [Doc. 49]. Upon review of the pleadings and the pertinent law, the Court finds that Defendants' Motion is well taken and will be granted in part.

**Undisputed material facts**.

In October 2009, Plaintiff Tibo Chavez, Jr. ("Chavez") saw a 2007 Jeep Liberty advertised by Quality Automotive on the Auto Trader website for $16,900. When Chavez viewed the Jeep in person at Quality Automotive lot on October 10, 2009, the Jeep was sticker-priced at $19,990. After Chavez told the Quality Automotive salesman about the Internet price, Quality Automotive agreed to sell Chavez the Jeep at the advertised price of $16,990.

While working with Chavez, Quality Automotive salesman Salvador Solis ("Solis") told the

Plaintiffs that he thought the Jeep had a five year/60,000 mile manufacturer's warranty. Solis testified in his deposition that when "[t]hey asked me what the warranty was and I told them what I thought it was and apparently it was wrong." Response, Doc. 49 at Exh. 1. Chavez was ultimately provided with the correct manufacturer's warranty information for the Jeep Liberty. Quality Automotive tried to sell the Plaintiffs an extended warranty for $250. Chavez testified: "And so they offered the 250, and I was getting tired – frustrated with them going back and forth and trying to sell me something that I did not want in an extended warranty. So I said, Okay, I'll deal with the warranty issue later, and I left." Reply, Doc. 49 at Exh. 3 at 2.

> Chavez attempted to leave Quality Automotive in the Jeep. Chavez testified that:
>
> ...Somebody was standing behind the vehicle. He had somebody else pull another vehicle up behind the Jeep so that I couldn't leave. Basically, he blocked us in, stopped us from going anywhere."

Response, Doc. 46, Exh. 1 at 31.

Defendant, Michael Jandran ("Jandran"), the Used Car Manager at Quality Automotive called the police. Officer Surran responded. In his report he states that"employees were advising 911 operator that a subject was attempting to steal a car." Motion, Doc. 39 at Exh. 5. Officer Surran conducted an investigation which included reviewing the documents provided by Quality Automotive and independently decided there had been no sale because he did not see a "bill of sale" in the sales paperwork.

**Summary judgment standard**.

Summary judgment should be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and the movant is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c)(2). Summary judgment is "properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the

Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed.R.Civ.P. 1). The movant bears the initial burden of "show[ing] that there is an absence of evidence to support the nonmoving party's case." *Bacchus Indus.,Inc. v. Arvin Indus., Inc*., 939 F.2d 887, 891 (10th Cir. 1991)(internal quotation marks omitted); *Celotex Corp. v. Catrett*, 477 U.S. at 323.

Once the movant meets this burden, Rule 56(e) requires the non-moving party to designate specific facts that would be admissible in evidence showing that there is a genuine issue for trial. *Id.* at 324. "[T]here is no evidence for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable...or is not significantly probative, ...summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)(internal citations omitted). Where the record taken as a whole could not lead a rational tier of fact to find for the non-moving party, there is no genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986).

**Section 1983 claim**.

Chavez alleges that the police officers' search and seizure violated his Fourth Amendment rights. Plaintiffs further allege that the Defendants deprived them of their property without due process of law. To prevail on a claim under 42 U.S.C. §1983, the plaintiff must allege "that the defendants acted under color of state law and that the defendants' actions deprived the plaintiff of some federal right." *Montgomery v. City of Ardmore,* 365 F.3d 926, 935 (10th Cir. 2004).

Plaintiffs argue vigorously that the fact there is a dispute as to whether Chavez signed a Purchase Agreement precludes summary judgment on Plaintiffs' civil rights claims. They assert that Chavez signed a Purchase Agreement and thus had purchased the vehicle. They further assert that

Jandran withheld this document from the police. Thus, the police and Jandran jointly and wrongfully deprived Plaintiffs of the Jeep. This argument fails. Whether there was a signed Purchase Agreement or not, this fact is not material as to whether there is state action or that Jandran was a state actor.

The Supreme Court has stated, "[o]ur cases try to plot a line between state action subject to Fourteenth Amendment scrutiny and private conduct (however exceptionable) that is not." *Brentwood Acad. v. Tenn. Secondary School*, 531 U.S. 288, 295 (2001) (citations omitted). The Supreme Court has further stated that there is a judicial obligation to not only "preserve an area of individual freedom by limiting the reach of federal law and avoid the imposition of responsibility on a State for conduct it could not control, but also to assure that constitutional standards are invoked when it can be said that the State is responsible for the specific conduct of which the plaintiff complains." *Id.* Under some circumstances, the conduct of private parties may be deemed to be state action when the "conduct allegedly causing the deprivation of a federal right may be fairly attributable to the State." *Lugar v. Edmonson Oil Co., Inc.*, 457 U.S. 922, 937 (1982). Whether conduct may in fact be "fairly attributed" to the state requires a two-part inquiry. "First, the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the state or by a person for whom the State is responsible." *Id*. "Second, the party charged with the deprivation must be a person who may fairly be said to be a state actor." *Id*. The Court in Lugar stated that in enacting §1983, Congress intended to provide a federal cause of action primarily when the actions of private individuals are undertaken with state authority. *Id.* at 934. "Thus, absent more, causing the state, or an arm of the state, to initiate a prosecution or serve process is insufficient to give rise to state action." *Brophy v. Ament*, 2009 WL 5206041, *8 (D. N.M. 2009).

Plaintiffs assert that Jandran's conduct constitutes state action under the joint-action test.[1] Response, Doc. 46 at 12. State action exists under the joint-action test if the private party is a "willful participant in joint action with the State or its agents." *Dennis v. Sparks*, 449 U.S. 24, 27 (1980)(citation omitted). If there is a substantial degree of cooperative action between the state and private officials; or a form of conspiracy between public and private actions that share a common, unconstitutional goal, state action can be found. *Gallagher v. Neil Young Freedom Concern*, 49 F.3d 1442, 1454 (10th Cir. 1995); *Sigmon v. CommunityCare HMO, Inc.*, 234 F.3d 1121, 1126 (10th Cir. 2000) ("Moreover, 'the pleadings must specifically present facts tending to show agreement and concerted action.'") (citation omitted).

Tenth Circuit precedent precludes Plaintiffs' civil rights claim. *Pino v. Higgs*, 75 F.3d 1461 (10th Cir. 1996). In *Pino*, the Court stated "[w]e are disinclined to apply *Lugar* to a fact situation where a private party is simply reporting suspected criminal activity to state officials who then take whatever action they believe the facts warrant." *Id.* at 1465 (citation omitted). The evidence before the Court demonstrates that Quality Automotive merely blocked Plaintiffs from leaving and called the police because they thought that Chavez was going to steal the car. Quality Automotive did nothing to act in concern with the police once the police arrived and took no affirmative action at the direction of the police. Once Officer Surran arrived he conducted an independent investigation and relied on his own judgment in deciding what to do. All Quality Automotive did was to provide information and documents in response to his requests.

Thus, pursuant to *Pino*, Plaintiffs cannot prevail on their civil rights claim. *Gallo Loecks ex*

---

[1] The Supreme Court has articulated four different tests for courts to use in determining whether conduct by an otherwise private party is state action: (I) the public-function test; (ii) the nexus test; (iii) the symbiotic-relationship test; and (iv) the joint-action test. *Johnson v. Rodriques (Orozco)*, 293 F.3d 1196, 1202-1203 (reviewing the various tests). Here Plaintiffs assert only the joint-action test.

*rel. T.L. v. Reynolds*, 34 Fed. Appx. 644, 650 (10th Cir. 2002) ("A private person does not become involved in joint action with a law enforcement agency simply by furnishing information to officers.") (citing *Benavidez v. Gunnell*, 722 F.2d 615, 618 (10th Cir. 1983) (reporting a state crime is not state action); *Gibson v. Regions Financial Corp.*, 557 F.3d 842, 846 (8th Cir. 2009) ("...the mere furnishing of information to a law enforcement officer, even if the information is false, does not constitute joint activity with state officials."))

Even if the Court applied the *Lugar* analysis, Plaintiffs cannot prevail. Plaintiffs' allegations do not support a finding that Quality Automotive's conduct resulted from it exercising a state-created right, privilege or rule of conduct. The state is not responsible for Quality Automotive's actions. *Pino*, 75 F.3d at 1465 (holding that a therapist who called the police for assistance with a mentally ill patient did not do so pursuant to a right, privilege, or rule of conduct created by the state simply because the police followed her advice Joito transport the patient to the hospital). As to the second *Lugar* requirement, Quality Automotive cannot be fairly labeled a state actor. Plaintiffs have failed to show "a substantial degree of cooperative action between state and private officials." *Gallagher v. Neil Young Freedom Concern*, 49 F.3d at 1454. "[T]he mere acquiescence of a state official in the action of a private party is not sufficient" to show state action. *Id.* at 1453. Plaintiffs' allegations demonstrate there was no cooperative action. *Lee v. Ester Park*, 820 F.2d 1112, 1115 (10th Cir. 1987) (holding that the private individual who placed the plaintiff under civilian arrest and took him to the police station was not "jointly engaged with state officials" because the police officer made the independent judgment to charge the plaintiff with an offense).

Furthermore, the authority cited by the Plaintiffs does not support that Quality Automotive was a state actor. In *Coleman v. Turpen*, 697 F.2d 1341 (10th Cir. 1982), a private wrecking company towed, stored, and sold property belonging to the plaintiff at the direction of the state. *Id*.

at 1345.  The Court found that the sale of a towed vehicle satisfied the first part of *Lugar* because the sale was pursuant to a state statute.  The Court also found that the second part of *Lugar* was satisfied because the towing company seized the property and held it for the state and the state permitted the wrecking company to sell the property.  *Id.*  Thus, in *Coleman*, there was significant aid from the state and cooperation in depriving Coleman of his property.  Such is not the case here.  The facts demonstrate that Defendants merely called the police; the police responded; and the police made their own determination regarding how to proceed based on their investigation.  There is no joint participation by the Defendants and the state actors, the police.

Similarly, other cases cited by the Plaintiffs do not support Plaintiffs' arguments.  In these cases, there is a pre-determined plan directed by the private actor.  In *Howerton v. Gabica*, 708 F.2d 380, 384 (9th Cir. 1983), the Court found state action when a police officer, also a tenant of the landlord, accompanied the landlord to give an eviction notice and shut off the plaintiffs' utilities, visited the plaintiffs on his own, and asked the plaintiffs if they found another rental.  In finding state action, the Court noted that "[t]his case involves more than a single incident of police consent to 'stand by' in case of trouble.  Police were on the scene at each step of the eviction."  *Id.*  In this matter, Jandren merely called the police and provided information and documents as requested.[2]  Thus the *Howerton* decision is not helpful to the Plaintiffs.

In *Brophy v. Ament*, 2009 WL 5206041 (D. N.M. 2009), the Court found state action when a private actor spear-headed the repossession and another private actor, a policeman in uniform, was the first to confront the plaintiff, and stood by as another officer told the plaintiff she could not have

---

[2]The fact that Plaintiffs' suspect that Jandran did not provide all the documents, specifically the Purchase Agreement which Chavez says he signed, is not relevant to the issue of whether there was sufficient "cooperative action" between Jandren and the state actors.  In fact, if there was a signed Purchase Agreement and Jandran did not provide a copy to Officer Surran during his investigation such conduct on behalf of Quality Automotive would demonstrate a lack of "joint action" or cooperation rather than support a claim that Jandran was acting in concert with the police.

the car.  In finding state action the Court noted that "[i]f, however, the Ruidoso police did nothing more than merely acquiesce to the requests of [the private] owner[s], there may not be state action by [the private owner], in their capacity as private persons." *Id*. at *19.  The Court found that the facts in *Brophy* closely resembled the facts in *Coleman*.  As discussed above, this matter is clearly distinguishable from *Brophy* and *Coleman*.  In *Brophy* and *Coleman* the private actors took affirmative action with the assistance of the police.  In the present case Quality Automotive did nothing more then call the police and furnish information as requested.  The fact that Quality Automotive may have prevented Plaintiffs from leaving before the police arrived is no different then the citizen's arrest in *Lee v. Ester Park*, *supra*.

Finally, because there are no federal claims other than the 28 U.S.C. §1983 claims, the Court will decline supplemental jurisdiction over the state claims.  29 U.S.C. §1367(c)(3).  *Smith v. City of Enid By and Through Enid City Comm'n*, 149 F.3d 1151, 1156 (10th Cir. 1998("When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims.").

**IT IS THEREFORE ORDERED** that Defendants' Motion for Partial Summary Judgment is granted in part in that Plaintiffs' 28 U.S.C. §1983 claims as stated in Count I are dismissed with prejudice and Plaintiffs' state law claims, as stated in Counts II-VI, are dismissed without prejudice.

**IT IS FURTHER ORDERED** that Plaintiffs' Complaint for Damages and Jury Demand, filed January 14, 2010, is dismissed.

_____
**ALAN C. TORGERSON**
**UNITED STATES MAGISTRATE JUDGE,**
**PRESIDING**